## JOHN S. JACKSON v. T. F. EMMENS.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 5, 1888—Decided March 19, 1888.

1. In an action against the principal upon a contract made for him by an agent, if it be that the defendant informed the plaintiff before the contract was executed that the agent was to act for him in the transaction during his intended absence, the powers of the agency cannot be limited by evidence of the declarations of the principal and agent to each other not in the presence of the plaintiff.

2. When two persons, having a joint option for the purchase of real estate, contract to complete the purchase and to share the profits of a sale by them, one may recover from the other his share of the profits afterwards so made in assumpsit declaring on the common counts.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 120 July Term 1887, Sup. Ct.; court below, No. 23 July Term 1885, C. P.

On April 29, 1885, Thomas F. Emmens brought assumpsit against John S. Jackson, declaring in the common counts.

At the trial on May 19, 1887, the facts so far as material were as follows:

It was undisputed that some time in the spring of 1884, the plaintiff and defendant together had acquired a written option on the purchase for $6,000 of a certain property near Pen Argyl, owned by Wm. Welser, which option had been renewed for a certain number of days; that during the time of the options, the plaintiff and defendant entered into negotiations through Hiram Westbrook for the sale of the land to the Pen Argyl Land Improvement Company. The terms of the contract agreed upon with Westbrook, as claimed by the plaintiff and not specifically denied by the defendant, were that the plaintiff and defendant were to realize $8,000, out of which Welser was to be paid $6,000, $2,000 was to be divided between plaintiff and defendant, and Westbrook was to have all he could get for the property over $8,000. A contract for the sale of the property to the Pen Argyl Land Improvement Company for $9,000 was arranged, but not finally consummated when the defendant found it necessary to go to the west.

When it was suggested to the defendant that he ought to remain at home until the contract was closed, he replied, as the plaintiff testified, that he could not remain but that his brother Richard Jackson would attend to the business for him, and that the deed should be made to Richard who would convey to the purchasers. The fact that he made the statement that the deed was to be made to Richard and the conveyance to the purchasers from Richard, was not denied by the defendant, but he did deny that he gave any general authority at all to his brother, or that he gave to the plaintiff or Westbrook notice that his brother had any general authority in the business.

During the defendant's absence in the west, the contract for the sale of the property was closed, deeds to be passed from Welser to Richard, and from Richard to the purchasers, the latter to give a mortgage for $4,000, $2,000 in lots and $3,000 in cash. When the defendant returned from the west, he at first promised, as testified by the plaintiff, to pay the latter $1,000, being one half the profits, but afterwards repudiated the transaction, claiming that the consideration for the conveyance was not as he had agreed to, in that but $1,000 was to be paid in lots, and the balance was to be paid by the mortgage and in cash.

John S. Jackson, defendant, on the stand:

Q. Did your brother Richard, when you returned, tell you what contract had been finally consummated and how it had been consummated between the Pen Argyl Land Improvement Co. and himself and Mr. Emmens? A. Yes.

Defendant now proposes to prove by this witness that his brother Richard, upon his return, told him the terms of the contract which he and Mr. Emmens had consummated with the Pen Argyl Land Improvement Co. and that the same was materially different from the contract which the agent was authorized to make; that he notified his agent of his disavowal of that contract, and notified Mr. Emmens that he repudiated the contract, and that he never received any of its considerations, neither a dollar of the money paid, nor any conveyance of any part of the lots.

Objected to, as incompetent, irrelevant, res inter alios acta, hearsay, and not within the bill of particulars furnished by the defendant.

By leave of court, the defendant filed in writing an amended bill of particulars. Objected to.

By the court: After a careful consideration of the proposition and objections, I have come to the conclusion that you cannot offer in evidence any declarations or statements made by either John S. Jackson to Richard Jackson or by Richard Jackson to John S. Jackson; the fact may be proven, however, under your offer, that Richard Jackson, upon John S. Jackson's return from the west, told him what the terms of the contract were. You may prove the fact, also, that he refused to accept the contract as made; but what was said in the refusal or what was said to him in relation to the terms of the contract will be excluded.[1]

. The defendant testified under this offer that on his return, his brother Richard communicated the terms upon which the transaction was closed; that he refused to accept them because they were not as he had authorized, and that within a few days he notified the defendant he would not ratify the contract; that he had received from Richard no part of the money that had been paid or any conveyance of any interest in the lots, and denied that he had ever promised to pay plaintiff, as the latter had testified.

Richard Jackson, sworn for defendant:

Defendant proposes to prove by the witness that prior to John S. Jackson's departure for the west he advised the witness of the terms of the contract, which terms it is proposed to prove by the witness, and which witness was directed to consummate as the agent of the defendant, the contract to be taken with the evidence of the plaintiff that he knew the witness was the agent of the defendant; to be followed with proof that the terms of that contract as stated to the witness were impossible of fulfilment within the stipulated time, and also to be followed by proof that the defendant repudiated the contract which has been made on his behalf and that he never participated in any of the fruits of its consideration.

Objected to, as incompetent and irrelevant.

By the court: The witness will be permitted to testify that his brother told him what the terms of the contract were, but will not be permitted to testify specifically to what his brother said they were.[2]

Under this offer the witness testified that before the defendant went away he told witness what the terms of the contract were; that witness was unable to make the contract his brother instructed him to make; that the original and renewed options having expired on July 25, 1884, he had procured an option in his own name from Welser and on that day closed a contract with the Pen Argyl Land Improvement Company, by the terms of which witness was to receive a mortgage for $4,000, $2,000 in lots, and $3,000 in cash, and witness told the plaintiff at the time, that he was making the contract for himself; that the deeds were to be passed on August 26th, before which time the defendant returned, and refused to accept the contract as made; that on August 26th, the witness received $1,000 in cash, a note for $1,500, a promise of $500 to be paid in a few days but never paid, deeds for lots at $2,000 and a mortgage for $4,000, afterward assigned to Welser; that no part of the consideration was ever paid or turned over to the defendant.

The court, REEDER, J., after fully reviewing the evidence, charged the jury as follows:

For the purposes of this case you will have to consider this testimony for the purpose of determining whether the defendant

did or did not tell the plaintiff that his brother was authorized generally to conduct the business for him, because you will perceive that in the consideration of this case it may be an important matter for you to determine whether Richard Jackson had the general power as agent to conduct this business for him, or whether he had limited power, or whether at least the plaintiff had knowledge that he had general power, or had notice that his power was limited; because, [if John S. Jackson upon the point of his departure for the west told T. F. Emmens that Richard Jackson had general power to attend to this business for him, then he was his general agent, and any contract or arrangement that Richard Jackson made for him in his absence he is bound by; and if his agent, so constituted by him for the general purpose of concluding this business, made any contract as such agent having such general power, then John S. Jackson was concluded by whatever arrangement Richard Jackson, as his agent, made; and when the fruits and profits of that contract came into the hands of Richard Jackson, the agent so constituted generally by J. S. Jackson, or whom he told T. F. Emmens he had so constituted as his agent generally, then the liability of John S. Jackson attached to Richard Jackson and he became liable to pay, although he had never received one dollar of money from his agent, Richard Jackson.] [8]

[If, on the other hand, you find that John S. Jackson did not tell T. F. Emmens that Richard Jackson was constituted his agent to conclude this business generally, but told him that he was his agent simply for the purpose of carrying out the contract as he himself had made it, and you believe that the contract, as finally concluded, was materially different from the contract as made by John S. Jackson before he left for the west, then Richard Jackson exceeded his instructions, exceeded that which T. F. Emmens knew to be his instructions, and John S. Jackson had a right to repudiate the bargain, provided he gave T. F. Emmens notice of the fact, in time for him to protect his interest, that he repudiated the contract.] [9]

This brings you to the consideration of the question as to whether the contract ultimately consummated was the contract originally made. This question, as I said before, only be-

Charge of Court below.

comes a matter of important consideration if you should find that Richard Jackson was limited in his authority in carrying out this business. If he was limited in his authority to the carrying out of the contract as it was entered into before John S. Jackson left for the west, then you will determine from the evidence whether the contract as consummated was the contract as agreed upon by John S. Jackson previous to his departure.

According to the testimony of the plaintiff, the only material difference is in the giving of the note. The plaintiff testifies that two thousand dollars was to be accepted by John S. Jackson in lots, as part payment of the consideration money. John S. Jackson denies that, and says that there was but one thousand dollars to be received in lots, the rest to be paid in money. The only corroboration of either of the two statements is by Richard Jackson, who testifies that the contract was for one thousand dollars' worth of lots, and that this was afterwards changed by him, and the testimony of T. F. Emmens, and of Hiram Westbrook, who testifies substantially that the contract was as testified to by T. F. Emmens. John S. Jackson, when asked in his cross-examination if it was not agreed between himself and Hiram Westbrook that Westbrook should receive one half of the lots to be paid to him as part of the consideration price for the sale of the Welser farm, says yes ; that he had agreed to receive as his, Westbrook's share, one half of these lots. That being an admission by John S. Jackson, you have a right to take that also into consideration in determining what the contract was.

If you should find from this testimony that the original contract was that they should receive two thousand dollars' worth of lots, a mortgage for four thousand dollars, and three thousand dollars in cash, as testified to by plaintiff, then [you will determine from the testimony, under the instructions of the court, whether the receiving of a note for fifteen hundred dollars, in lieu of the money, by Richard Jackson, was a material alteration of the terms of that contract, so as to relieve John S. Jackson as principal from the action of his agent, Richard Jackson. You will remember from the testimony that Richard Jackson received this note ; he took the note, indorsed it, put it to his individual credit ; he got the money upon that note,

after having indorsed it, and, according to the testimony of T. F. Emmens, certain lots were assigned to Richard Jackson as collateral security to secure him against. loss by reason of that indorsement. If you believe that to be true, then I say to you, gentlemen of the jury, that, as a matter of law, there was not such a material alteration of the terms of the contract, if you find that part of the consideration was to be two thousand dollars, that there was no such material alteration of the terms of the contract, even though you should find that those were the instructions given by John S. Jackson to Richard Jackson, and that that was the declaration which John S. Jackson made to the plaintiff, T. F. Emmens, as would relieve John S. Jackson, as principal, from the act of his agent in concluding the contract.] [10]

I do not know that there are any other facts in connection with this case that I care to call your attention to, or which occur to me as being important in the consideration of this case, and I will, therefore, conclude my charge to you by answering the several points which have been submitted by the defendant, which embody the legal propositions involved in this case, for your instruction.

1. Under the pleadings and evidence in the cause the verdict must be for the defendant. Because

a. It is undisputed that the defendant has not received the money sued for by the plaintiff.

b. It is undisputed that the money sued for was the profits of a partnership in which plaintiff, defendant and Westbrook were interested, and the remedy is for an account in equity.

c. There is no evidence of demand by plaintiff of the defendant, and refusal by him to convey his proportional interest in lots received as part of this consideration.

d. If a trust ex maleficio arises, a special count in the declaration is necessary, and then the suit would be against Richard Jackson.

e. The whole consideration was never paid by the Pen Argyl Land Improvement Company, even by the testimony of plaintiff, until after suit.

Answer : That point I deny. [5]

2. There is no sufficient evidence to submit to the jury of fraud or collusion between the defendant and Richard Jackson

in the final arrangements of conveyance, to deprive the plaintiff of his rights under the original option and its extension of July 5th.

Answer: That point I deny.[6]

6. The plaintiff is not entitled to recover the one thousand dollars claimed by him to represent the one third of the profits in the contract.

Answer: That point I deny, and in connection with that proposition I want to say this to you: If you find that the arrangement was as testified to by T. F. Emmens, that he and John S. Jackson should sell the property for eight thousand dollars, and that Hiram Westbrook was entitled to receive all over eight thousand dollars that he could sell the property for, then, no matter if the property may have brought eighty-five hundred dollars, Mr. Emmens would be entitled to a thousand dollars of it. So, also, he would be entitled to receive, if he is entitled to receive anything, whatever, if you believe that to be the contract, may be the difference between the price the property sold for, providing it does not exceed eight thousand dollars and the six thousand dollars paid to Welser, and if it brought more than eight thousand dollars, and there is no testimony here to show it did not, then T. F. Emmens would be entitled, if that was the original arrangement, to receive the thousand dollars. If the original arrangement was that the profits of the contract, the fruits of this agreement, should be divided between three of them, then, as the property did not realize quite nine thousand dollars, he would be only entitled to receive one third of whatever profit was received.[7]

The verdict of the jury was in favor of the plaintiff for $1,000, and judgment being entered thereon the defendant took this writ, assigning for error:

1, 2. The refusal of defendant's offers.[1 2]

5-7. The answers to defendant's points.[5 to 7]

8-10. The parts of the charge embraced in [ ] [8 to 10]

*Mr. Henry W. Scott*, for the plaintiff in error:

1. The declaration being in the common counts, the plaintiff could not recover from his joint covenantor, unless in point of fact the latter had received the money, and even though he might have elected to hold his agent responsible but did not:

Doebler v. Fisher, 14 S. & R. 179; Kearney v. Tanner, 17 S. & R. 94; Morrison v. Berkey, 7 S. & R. 238; Witherup v. Hill, 9 S. & R. 11; Bomeisler v. Dobson, 5 Wh. 404; Bethlehem v. Fire Co., 81 Pa. 459; Kellam v. Kellam, 94 Pa. 225. It was not disputed that the defendant never received a dollar of the consideration, either in money or in land.

2. The plaintiff made the contract jointly with the defendant and knew just what it was. He knew that the brother was exceeding his instructions. Dealing with a known agent, he was bound to know his authority and contracted with him at his peril: Story, Agency, § 192; Wilson v. Wilson, 26 Pa. 393; Kroeger v. Pitcairn, 101 Pa. 316.

3. The excluded declarations would have disclosed that, while the principal disavowed the act of the agent, the latter had gone so far in his negotiation that he was obliged to complete it and make it his own. But, without all these circumstances the bold fact of repudiation loses much of its significance.

*Mr. Charles F. Walter* (with him *Mr. O. H. Meyers*), for the defendant in error:

There is no merit in the argument that an action of account would have been the proper form of action and that plaintiff could not recover in assumpsit because "the money sued for was the profits of a partnership." The transaction out of which the liability arose was the purchase of a single item of property, and the question to be answered was, how much, if anything, has been gained, by the purchase and re-sale; Brubaker v. Robinson, 3 P. & W. 297; Meason v. Kaine, 63 Pa. 335; McFadden v. Erwin, 2 Wh. 37; Finlay v. Stewart, 56 Pa. 183. There was nothing in the case but a question of fact. It was for the jury to say who they would believe; they chose to believe the plaintiff.

OPINION, MR. CHIEF JUSTICE GORDON:

There is one thing very certain in this contention, and that is that the jury believed the testimony of the plaintiff rather than that of the defendant, and as the case was principally for the jury little more need be said about it. We may remark, however, that the exceptions to the court's ruling on the pro-

posed evidence cannot be sustained, for if the defendant informed the plaintiff that his brother was to act during his absence, in his place, and for him, in the transaction then in hand, it is very clear that he could not limit that power, or agency, by any declarations which his brother made to him, or he to his brother, in the absence of the plaintiff. Of this proposed evidence the court admitted quite as much as the defendant had a right to expect.

Nor can we see why exception was taken to the judge's charge. There can be no doubt that if Richard Jackson was to act for his brother, John S., during his absence, then the latter was bound by the acts of the former; and, if so, clearly, by the arrangement as consummated, the plaintiff became entitled to his thousand dollars. Moreover, the matter in controversy depended upon the question whether the defendant by himself or his agent assumed to pay the plaintiff the said sum, and as to this, he, Emmens, testifies that the defendant repeatedly promised to pay him as soon as the transaction was finally closed. So that the plaintiff was wanting in no legal principle for the support of his writ.

The judgment is affirmed.